IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ESMERALDA SMITH, | § § § | |
| Plaintiff | § § | |
| v. | § § | CIVIL ACTION NO. 4:10-CV-03625 |
| FLUOR ENTERPRISES, INC., | § § | |
| Defendant. | § § | |

## MEMORANDUM & ORDER

Before the Court is Defendant Fluor Enterprises, Inc. ("FEI's") Motion for Summary Judgment (Doc. No. 36.) After considering the Motion, all responses and replies, and the applicable law, the Court concludes that Defendant's Motion should be **GRANTED**.[1]

### I.   BACKGROUND

FEI hired Esmeralda Smith on May 26, 2008 to work as a Utility Worker on the construction of the Oak Grove Power Plant (the "Oak Grove Project") at the entry wage of $16.00 per hour. (Doc. No. 36-2, ¶ 3 [Carmichael Decl.]) Utility workers were generally responsible for sweeping, picking up trash, and keeping the construction area clean of debris. (Esmeralda Smith Dep. 15:12-18, 22:12-20, 96:25-97:5, December 20, 2011.)

When Smith was hired she received a copy of FEI's Craft Employee Handbook, which outlined the procedures by which employees could report problems, suggestions or complaints by using the Open Door Policy or calling FEI's Compliance Hotline. (Smith Dep. 63:11-64:7, 67:1-14; Doc. No. 36-3 [Fluor Craft Employee Handbook], Doc. No. 36-4 [Fluor Craft

---

[1] Defendant's objections to Plaintiff's summary judgment evidence (Doc. No. 40) are sustained. However, even if the objections were overruled, summary judgment for the Defendant would be appropriate.
Finally, Plaintiff's request to file a surreply (Doc. No. 41) is denied.

1

Employee Orientation], Doc. No. 36-5 [Smith Acknowledgement of Fluor Policies].) Smith understood she could raise concerns with a supervisor, the Safety Department, or Human Resources ("HR"), and could contact someone higher up if she was dissatisfied with the result. (*Id*.; Smith Dep. 68:7-69:9.) She also understood that she could bypass local management altogether and call the Compliance Hotline. *Id.* Although Smith was aware that FEI offered training to help employees learn craft jobs, she did not take advantage of training opportunities because she would have had to attend classes outside of her regular work schedule. (Smith Dep. 98:9-23; 99:2-12.)

Smith was initially assigned to work on Utility Foreman Ramon Perez's cleaning crew. (Smith Dep. 95:20-22.) On or about June 21, 2008, Smith was transferred to work on Utility Foreman Dena Belcher's ("Belcher") cleaning crew after Belcher was promoted to Utility Foreman. (Smith Dep. 96:1-6; Doc. No. 36-2, ¶ 6 [Carmichael Decl.]) Smith asserts that she later requested and was transferred to Utility Foreman Cleo Lewis's ("Cleo") cleaning crew. (Smith Dep. 97:6-19.) On or about August 23, 2008, Dedrick Richardson ("Richardson") (who was Smith's second-level manager) gave Smith a satisfactory three month evaluation, which resulted in Smith receiving a pay increase to $16.60 per hour. (Doc. No. 36-10 [Smith Hourly Evaluation by Cheatham] Doc. No. 36-2, ¶ 6 [Carmichael Decl.]) On or about December 19, 2008, Smith resigned from her position as a Utility Worker at the Oak Grove Project, and stated that she planned to attend military school. (Smith Dep. 73:10-75:7*;* Doc. No. 36-7 [Craft Employee Exit Interview Form].)

Smith brings sex discrimination, retaliation, and hostile environment claims against FEI. Smith bases her claims on not receiving a forklift position she applied for, inappropriate comments made to her, and an uncomfortable work environment. As far as Smith's claims

2

overlap with her coworker, Belcher, who also has a lawsuit pending in this Court, the Court has already described FEI's work environment in its Order on Summary Judgment in Belcher's case. Smith, Belcher, and Rhonda Woolard's cases against FEI are all in this Court. The claims are substantially similar, and the cases were consolidated for purposes of discovery. As Belcher's case was designated the lead case, with the earliest trial date, the Court has already published its findings in that Order, and therefore, publishes a shorter order here.

1. **Forklift Position**

At some point prior to July 2008, Smith expressed interest in an open forklift position. *Pl. Dep. 76:8-16.* Smith spoke with Fred Martin ("Martin"), Equipment General Foreman, and Michael Cheatham ("Cheatham"), the Utility Superintendent, about the position. (Smith Dep. 76:10-24.) Smith completed the necessary paperwork and passed the forklift driving test. (Smith Dep. 76:23-77:1.)  Smith alleges that Martin and Cheatham told her she would be transferred to the forklift position. (*Id.*, Doc. No. 5, ¶ 20 [Complaint].)   However, Martin and Cheatham neglected to tell HR about their conversations with Smith. (Doc. No. 36-2, ¶ 9.) Thus, Nicholas Carmichael ("Carmichael"), Senior HR Manager, selected Sharon Lewis, a female with prior forklift experience for the job. (Smith Dep. 77:2-5; Doc. No. 36-2, ¶ 9; Doc. No. 36-8 [Lewis Employment Application].)  Unlike Smith, Sharon Lewis stated on her Employment Application that she had earned certifications and licenses related to the operation of machinery, such as a forklift. (Smith Dep. 84:1-17; Compare Doc. No. 36-6 [Smith Application] with Doc. No. 36-8 [Lewis Application].) Smith's application did not reflect any previous forklift experience.[2] Smith did not complain to HR or the Complaint Hotline that she had not received the forklift job.

---

[2] Although Smith claims she was previously licensed to operate a forklift, her Employment Application does not reflect any previous experience, licenses or certifications. (Smith Dep. 11:23-12:9, 84:1-17; Doc. No. 36-6 [Employment Application].)

(Smith Dep. 78:18-22.) FEI learned about Smith's complaint for the first time when she filed her EEOC charge. (Smith Dep. 109:10-14; Doc. No. 36-12 [Smith's Charge of Discrimination].)

### 2. Richardson's Inappropriate Comments to Smith

Smith alleges that Richardson (the Utility General Foreman who was Smith's second-level manager) made inappropriate comments to Smith, including (1) telling Smith there were "no girls allowed" in the break room (Smith Dep. 53:20-54:14), (2) asking Smith to have a sexual relationship with him, (Smith Dep. 26:17-27:6, 54:24-55:12), and (3) supervising Smith more closely than her coworkers (Smith Dep. 55:13-22.) Smith reported the comments and behavior to her immediate supervisor, Belcher, who reported it to HR. (Smith Dep. 55:19-56:8.) After Belcher reported the comments, Smith stated that Richardson did not make further comments to her, and stayed away from her. (Smith Dep. 56:9-14; 109:2-9.)

Smith also alleges that once Shaketia Richardson, Dedrick Richardson's wife, returned from her leave of absence, Richardson tried to "get rid" of Smith. (Doc. No. 5, ¶ 15.) For example, Smith claimed that Richardson instructed Belcher to reprimand Smith for excessive absenteeism. (Smith Dep. 72:7-73:8; Doc. No. 36-9 [Verbal Reprimand of Smith].) However, the oral reprimand regarding absenteeism was given to Smith several weeks before Shaketia Richardson's leave of absence. *(Id.;* Doc. No. 36-2, ¶ 14.) After September 6, 2008, Solis replaced Richardson as Smith's second-level manager on September 6, 2008 and thus Richardson was no longer in Smith's direct reporting chain after that date. (Doc. No. 36-2, ¶ 6.)

### 3. Inappropriate Conduct by Rouse

On or about October 24, 2008, Belcher and Mandy Wandrick ("Wandrick"), a Utility Worker, reported to HR that Robert "Doc" Rouse ("Rouse"), a Senior Occupational Nurse who treated minor medical conditions at the Oak Grove Project, had allegedly touched some female

employees in an inappropriate manner. (Doc. No. 36-2, ¶ 10.) Carmichael, the Senior HR Manager, then launched his investigation by reviewing the first-aid logs to determine if any other female employees had seen Rouse for first-aid treatment. Carmichael then interviewed ten female employees who had seen Rouse. (Doc. No. 36-2, ¶ 11, ¶ 12.)

As a part of the investigation, Smith told HR that she had injured her lower back while working and had sought medical attention from Rouse. (Smith Dep. 31:1-32:10.) Smith stated that Rouse had rubbed ointment on her lower back, which made Smith feel uncomfortable.[3] *Id*. The HR investigation was the first time that Smith reported this incident. (Smith Dep. 35:18-21.) In response to the investigation, FEI took the following actions: (1) Rouse received a written reprimand for any unprofessional behavior that may have occurred; (2) Rouse was only permitted to treat female employees as long as another female employee was present; and (3) Rouse was required to attend sexual harassment training. (Doc. No. 36-2, ¶ 13; Doc. No. 36-11 [Written Reprimand of Rouse].) Smith did not experience future encounters with Rouse in which she felt uncomfortable. (Smith Dep. 35:4-35:10, 109:15-25.)

### 4. "Demeaning" Cleaning Tasks

Smith alleges that the cleaning tasks she was asked to do were demeaning. The Court notes that Belcher alleged a similar complaint, however, as noted in the Court's Order in that case, cleaning was a part of the Utility crew's work description. Smith was aware that cleaning was part of her job duties. (Doc. No. 5, ¶ 12 [Cmp.]; Smith Dep. 15:12-18, 22:12-20, 96:25-97:5.) Both females and males were assigned to complete such tasks. (Smith Dep. 91:7-12, 94:11-20; Doc. No. 36-2, ¶ 5.) Smith eventually requested to be transferred to Cleo's crew because she thought she would receive more challenging tasks. (Smith Dep. 94:3-20, 97:6-19.) Smith's request was approved. *Id.*

---

[3] This was the only time that Smith visited the medical station for treatment of back pain. (Smith Dep. 32:22-24.)

5. **Uncomfortable Work Conditions**

Smith alleges that the sidewalks and walls of the Oak Grove Plant were filled with sexually explicit graffiti, including pictures of naked women, male private anatomy, and individuals involved in sexual acts. (Doc. No. 5, ¶12; Smith Dep. 18:16-17, 21:12-24.) Smith further alleges that the walls of the portable restrooms were covered in sexually explicit phrases. *Id.* Smith acknowledged that the graffiti was not directed at her, that she noticed the graffiti because the cleaning crew had been tasked with removing it, and after complaints were made, Cleo's cleaning crew cleaned the graffiti more frequently. (Smith Dep. 21:25-22:1; 22:12-14; 23:8-24:7; Carmichael Dep. 28:8-13, May 30, 2012.) Smith herself did not complain about the graffiti. (Smith Dep. 21:2-11.)

Like Belcher, Smith also alleges that liquids would fall on the Crew from elevated levels. (Doc. No. 5, ¶12; Smith Dep. 90:6-16, 92:8-11.) Smith could not identify who had spilled the liquid on her or whether it was intentional. (Smith Dep. 90:20-23, 91:16-25, 92:1-4, 92:8-23.) Smith also testified that she did not think that the liquid was actually urine. (Smith Dep. 92:5-7, 92:21-23.) Additionally, Smith never reported these concerns to HR on the Compliance Hotline. (Smith Dep. 92:24-93:12.)

## II. LEGAL STANDARD

Summary judgment is warranted where a party establishes that there is no genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact of the case. Fed. R. Civ. P. 56(a), *Willis v. Roche Biomed. Lab.,* 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

Furthermore, the summary judgment standard "provides that the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis*, 61 F.3d at 315. First, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Second, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). While all justifiable inferences should be drawn in the nonmovant's favor, conclusory affidavits will not suffice to create or negate a genuine issue of fact. *Anderson,* 477 U.S. at 255; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Circ. 1986).

### III. ANALYSIS

Before addressing the merits of Defendant's Summary Judgment Motion, the Court will address Plaintiff's Request for Leave to file a Surreply. The Court denies Plaintiff's request. The Federal Rules of Civil Procedure do not expressly provide for the filing of a surreply, thus necessitating parties to file a motion for leave before filing a surreply. *McClyde v. Jackson*, 2010 U.S. Dist. LEXIS 11082, *26 (S.D. Tex. 2010); *Garrison v. Northeast Georgia Medical Center*, Inc., 66 F.Supp.2d 1336 (N.D. Ga. 1999).

Leave to file a surreply is granted only in limited circumstances. *Lacher v. West*, 147 F.Supp.2d 538, 539 (N.D. Tex. 2001); *Ponder Research Group, LLP v. Aquatic Navigation, Inc.*, 4:09-CV-322-Y, 2009 WL 2868456 (N.D. Tex. Sept. 4, 2009); *Weems v. Hodnett*, 10-CV-1452, 2011 WL 2731263 (W.D. La. July 13, 2011). The Court finds that the Defendant did not raise new legal theories or attempt to present new evidence in the Reply that would necessitate a surreply by Plaintiff. Thus, the Court denies Plaintiff's request to file a surreply.

Smith's claims are governed by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Smith must first establish a prima facie case by establishing: (1) she was in a protected class (female); (2) she was otherwise qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than other similarly situated employees under nearly identical circumstances. *Lee v. Kansas City of Souther Ry. Co.,* 574 F.3d 253, 259 (5th Cir. 2009). If Smith can establish a prima facie case, the burden of production shifts to FEI to articulate a legitimate, nondiscriminatory reason for its employment decision(s). *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

If FEI has articulated a legitimate, nondiscriminatory reason for all of the adverse employment actions it has taken with respect to Smith, Smith may prevail only by proving that each of FEI's proffered reasons is pretextual or that FEI was somehow motivated by Smith's sex in making its decision. *Nasti v. Ciba Specialty Chem. Corp*., 492 F.3d 589, 593 (5th Cir. 2007). Pretext is not established if Smith creates only a weak issue of fact as to whether FEI's reason is untrue, and there is "abundant and uncontroverted independent evidence that no discrimination . . . occurred." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 148 (2000).

In order to prove a prima facie case of sex discrimination, Smith must demonstrate that she suffered an adverse employment decision. For intentional discrimination claims, an actionable adverse employment action must be an "ultimate employment decision" such as "hiring, granting leave, discharging, promoting, and compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Smith's claim that she was given "demeaning" cleaning jobs (Doc. No. 5, ¶ 12) does not constitute an ultimate employment action, nor does Smith's claim that she was denied training opportunities.. *See Hart v. Life Care Ctr. Of Plano*, 243 Fed. Appx. 816, 818 (5th Cir. June 26, 2007) (being assigned more difficult tasks is not

8

actionable); *Jones v. BP Amoco Chemical Co.*, 2012 WL 1424986, at *5 (S.D. Tex. April 23, 2012). The only actions Smith alleges that would qualify as an adverse employment decision would be the denial of the forklift position and her constructive discharge claim.

### **Denial of the Forklift Claim**

Plaintiff's claim that she was denied the forklift position is barred by the statute of limitations. Any alleged act of discrimination or retaliation that occurred more than 300 days prior to the filing of Smith's EEOC charge is barred. 42 U.S.C. § 2000e-5(e)(1); *Muthukumar v. University of Texas at Dallas*, 471 Fed. Appx. 407, 409 (5th Cir. 2012) (300-day filing rule bars Title VII claims based on failure to promote); *Wang v. Prudential Ins. Co.*, 439 Fed. Appx. 359, 365-66 (5th Cir. 2011) (applying 300-day bar to Title VII retaliation claims). Smith filed her charge with the EEOC on June 22, 2009 (Doc. No. 36-12 [Smith's Discrimination Charge)). Thus, all alleged adverse employment actions that occurred before August 26, 2008 are time barred. Sharon Lewis was selected for the forklift position instead of Smith on July 7, 2008. (Doc. No. 36-2 ¶ 9; Doc. No. 36-12 [Smith's Discrimination Charge]; Smith Dep. 77:2-24; 81:15-21.) As a matter of law, Smith's claims related to the denial of the forklift position are time barred. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (requiring courts to dismiss claims that do not comply with the filing deadline regardless of the substantive merits of the claims).

Even if Smith's claims based on the denial of the forklift position were not time barred, Smith has not made a prima facie case that a similarly-situated individual was selected over her for the position. A comparison of the employment applications of Smith and Sharon Lewis shows that Lewis has more forklift and other related experience. (Compare Doc. No. 36-6 [Smith Application] with Doc. No. 36-8 [Sharon Application].) Smith admitted that she had no

previous craft or construction experience. (Smith Dep. 11:18-12:9.) The Court recognizes that the fact that another female was selected, by itself, does not negate the possibility of discrimination. *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir.1997). But even putting aside that Smith has not presented a similarly-situated *male* who was selected for the position, Smith has not made a prima facie case. Lewis had more experience listed in fork-lift driving, which means she was not similarly-situated to Smith. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *E.E.O.C. v. TXI Operations, L.P.*, 394 F. Supp. 2d 868, 882 (N.D. Tex. 2005).

If Smith and Lewis were considered similarly-situated, the burden would be on FEI to produce a legitimate, nondiscriminatory reason for hiring Lewis over Smith. The Fifth Circuit makes clear that the "promotion of a better qualified applicant is a legitimate, nondiscriminatory reason for preferring the successful applicant over the rejected employee who claims that the rejection was discriminatory." *Price v. Fed. Express Corp.*, 283 F.3d 715, 721, n.2 (5th Cir. 2002) (*quoting Jefferies v. Harris County Cmty. Action Ass'n.,* 693 F.2d 589, 590 (5th Cir. 1982)). Thus, Lewis' additional forklift experience would suffice to demonstrate a legitimate, nondiscriminatory reason that she was selected for the position. At this point, the burden would shift to Plaintiff to argue that FEI's proffered reasons are pretextual or that FEI was somehow motivated by Smith's sex in making its decision. *Nasti v. Ciba Specialty Chem. Corp*., 492 F.3d 589, 593 (5th Cir. 2007). However, Plaintiff does not dispute that Lewis had more experience than she, or offer any reason to believe FEI's reasons are pretextual.

Plaintiff also brings a retaliation claim against FEI for denying her the forklift position. Plaintiff must establish a prima facie case of retaliation by showing that (1) she engaged in several protected activities; (2) adverse employment actions occurred; and (3) there were causal

links between the protected activity and the adverse employment action. *See Taylor v. United Parcel Serv. Inc.,* 554 F. 3d 510, 523 (5th Cir. 2008). The only basis for her retaliation claim is the denial of the forklift position (Smith Dep. 87:1-5). Not only is this claim time barred, but Plaintiff cannot prove that she engaged in any protected activities, like making complaints about harassment, before the forklift position became open. Thus, she cannot show that "but for" her alleged protected activity, she would have been selected for the forklift position. *Baker v. American Airlines, Inc*., 430 F.3d 750, 754 (5th Cir. 2005); *Burlington Northern v. Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2414 (2006). Plaintiff's complaints about both Rouse and Richardson were *after* Lewis was selected for the forklift position. Thus, Plaintiff is unable to prove that there were causal links between the protected activity and the adverse employment action, one of the requirements for a retaliation claim. *See Taylor v. United Parcel Serv. Inc.,* 554 F. 3d 510, 523 (5th Cir. 2008).

**<u>Constructive Discharge</u>**

Although Smith voluntarily resigned from her employment at Oak Grove to attend military school (Smith Dep. 74:24-75:7), she claims that she was constructively discharged. To succeed on a constructive discharge claim, Smith must provide evidence that FEI made her working conditions "so intolerable that a reasonable person would feel compelled to resign." *McCoy*, 492 F.3d at 557. The evidence "must demonstrate a greater severity or pervasiveness of harassment than the minimum to prove a hostile work environment." *Stover v. Hattiesburg Pub. Sch. Dist.,* 549 F.3d 985, 991 (5th Cir. 2008).

The Fifth Circuit requires the existence of an aggravating factor to prove constructive discharge, such as (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor;

(6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms less favorable than the employee's former status. *Hockman v. Westward Commc'ns, LLC,* 407 F.3d 317, 331 (5th Cir. 2004).

Smith claims she resigned out frustration because she was not transferred to the forklift position several months earlier: "I felt after applying for a position and not getting that position and waiting for it, I just kind of said, 'Whatever,' and I just wanted to leave." (Smith Dep. 75:9-14.) Smith has not proven that not receiving the forklift position was so intolerable that a reasonable person would have been forced to resign. *Brown v. Kinney Shoe Corp*, 237 F.3d 556, 566-67 (5th Cir. 2001) (plaintiff's claim that he resigned because he was repeatedly denied promotion and transferred opportunities insufficient for a finding that a reasonable person in plaintiff's shoes would have felt compelled to resign). Moreover, the Fifth Circuit has made clear that an employee faced with an allegedly discriminatory denial of a job position must pursue less drastic options before leaving her job. *Haley v. Alliance Compressor LLC,* 391 F.3d 644, 652 (5th Cir. 2004). However, Smith never complained to HR or the Complaint Hotline about the denial of the forklift position before leaving her job (Smith Dep. 109:10-14.) The evidence Smith puts forth does not create a material fact that Plaintiff could meet the heightened standard required from proving constructive discharge.

### **Hostile Environment**

The Court will briefly address Smith's hostile environment claim. To establish a sexually hostile work environment, Smith must prove she: (1) belongs to a protected class (female); (2) was subject to unwelcome sexual harassment; (3) the harassment complained of was based on her sex; (4) the harassment complained of affected a term, condition or privilege of employment;

and (5) FEI knew or should have known of the harassment but failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 651 (5th Cir. 2012), *cert. denied*, 116 FEP Cases 224 (U.S. Oct 1, 2012).

The Court refers to its Order in *Belcher vs. Fluor Enterprises, Inc.,* No. 4:10-cv-3475 where this Court details why Belcher's complaints regarding the graffiti, demeaning tasks, falling liquids, and Rouse's inappropriate conduct—even aggregated—are not sufficient to prove a hostile environment claim. The Fifth Circuit's "hostile work environment standard is a 'demanding' one, and requires proof of severe or pervasive conduct that can be categorized as 'extreme.'" *Duplechin v. Potter*, 2012 WL 845160 at *5 (S.D. Tex. Mar. 12, 2012) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).[4] The only difference between Smith's complaints and Belcher's is that Smith alleges that Richardson directed inappropriate comments towards her. However, these comments, even combined with Smith's other complaints, do not meet the hostile environment standard. *Hockman v. Westward Commc'ns*, 407 F.3d 317, 236 (5th Cir. 2004) ("alleged conduct must be more than rude or offensive comments, teasing, or isolated incidents" and to survive summary judgment a plaintiff must show that the harassment was so severe or pervasive that it "destroyed [her] opportunity to succeed in the workplace).

Furthermore, Smith must establish that FEI knew or should have known of the harassment and failed to take remedial action. In instances where Smith reported inappropriate conduct—Rouse's for example—FEI took remedial measures such that the inappropriate behavior did not continue. In many other instances, Smith did not report the conditions that she now alleges make up her hostile environment claim. Although Smith was aware of the

---

[4] *Hockman v. Westward Commc'ns*, 407 F.3d 317, 236 (5th Cir. 2004) ("alleged conduct must be more than rude or offensive comments, teasing, or isolated incidents" and to survive summary judgment a plaintiff must show that the harassment was so severe or pervasive that it "destroyed [her] opportunity to succeed in the workplace).

procedures in place to report complaints, she never used these procedures to report: the alleged demeaning duties; certain alleged comments and behavior by Richardson (Smith Dep. 41:22-42:5, 54:15-23, 75:17-20, 92:24-93:12, 109:10-14, 116:10-13)[5]; the alleged acts of spitting or urinating (Smith Dep. 92:24-93:12); or the alleged sexually explicit graffiti (Smith. Dep. 21:2-11). Her failure to report these incidents bars her claims as a matter of law. *Hockman*, 307 F.3d at 330.[6]

## IV. CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment (Doc. No. 40) is **GRANTED.** The case is **DISMISSED WITH PREJUDICE**.[7]

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 12th day of February, 2013.

*/s/ Keith P. Ellison*

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[5] The Court notes that while Smith did not directly report her concerns to HR or the Complaint Hotline, Smith did report Richardson's conduct to Belcher, her immediate supervisor, who reported it to HR. Following Belcher's report, Smith had no further complaints regarding Richardson's conduct. (Smith Dep. 56:9-14; 109:2-9.)

[6] *See also Lauderdale v. Tex. Dept. of Criminal Justice*, 512 F.3d 157 (5th Cir. 2007) (if there are multiple avenues to notify the employer of alleged harassment, an employee failure to utilize such options is unreasonable and bars her claim); *Williams v. Barnhill's Buffet*, Inc., 290 Fed. Appx 759, 763 (5th Cir. 2008) (plaintiff's hostile environment claim barred when she chose not to notify any corporate representative or manager of allegedly harassing conduct and noting that "informal complaints to co-workers are insufficient" to put employer on notice of the need to address the misconduct).

[7] The Court does wish to note that it is extremely uncomfortable that the state of the applicable law compels dismissal. The allegations of misconduct are serious and, in some instances, odious. However, this Court's sworn duty is to apply existing law, not to offer its own version of what the law should be.